# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

### 19-315

CALCASIEU PARISH SCHOOL BOARD SALES

& USE DEPARTMENT, ET AL.

VERSUS

NELSON INDUSTRIAL STEAM COMPANY

\*\*\*\*\*\*\*\*\*\*\*\*

**APPEAL FROM**
**FOURTEENTH JUDICIAL DISTRICT COURT,**
**PARISH OF CALCASIEU, NO. 2017-1373**
**HONORABLE RONALD F. WARE, DISTRICT JUDGE**

\*\*\*\*\*\*\*\*\*\*\*\*

**SYLVIA R. COOKS**
**JUDGE**
\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Billy H. Ezell and John E. Conery, Judges.

**REVERSED.**

**Linda S. Akchin**
**Angela W. Adolph**
**Jason R. Brown**
**Kean Miller LLP**
**400 Covington Street, Suite 700**
**Baton Rouge, LA 70802**
**(225) 387-0999**
 **Attorneys for Appellant, Nelson Industrial Steam Co.**

**H. Alan McCall**
**Stockwell, Sievert, Vicellio, Clements & Shaddock**
**P.O. Box 2900**
**Lake Charles, LA 70602-2900**
**(337) 436-9491**
 **Attorneys for Appellant, Nelson Industrial Steam, Co.**
**Russell J. Stutes, Jr.**
**Stutes & Lavergne, LLC**
**600 Broad Street**
**Lake Charles, La 70601**
**(337) 433-0022**
 **Attorneys for Appellees, Calcasieu Parish School Board Sales and Use Tax**
  **Department**

**COOKS, Judge.**

### FACTS AND PROCEDURAL HISTORY

Nelson Industrial Steam Company (NISCO) produces electricity by burning petcoke to create steam that turns turbines to generate electricity for its own use and for resale. The steam generated is also a product for resale. In order to meet Environmental Protection Agency regulations when burning petcoke, NISCO must mix limestone with the petcoke and thereby limit production of sulfur into the atmosphere. The ash produced by this chemical reaction is also an end product for resale. NISCO's plant was designed with all three products in mind as revenue producing products in its overall operation.

On April 4, 2017, the Calcasieu Parish School Board Sales and Use Tax Department (CPSB) and Kimberly Tyree, in her capacity as administrator of the Department, filed suit against NISCO alleging "NISCO failed to pay and accrue use tax on its purchases of limestone." The Department based its suit on an audit of NISCO "for sales and use tax liability for the periods of January 1, 2013 through December 31, 2015." The Department alleged that NISCO's "taxable limestone purchases for the Audit Period total[ed] $17,785,725.58." It further alleged in the suit that NISCO's limestone purchases during the audit period were made subject to taxation by Act 3 of the 2016 Second Extraordinary Session of the Louisiana Legislature, which became effective on June 23, 2016:

> If the materials are further processed into a byproduct for sale, such purchases of materials shall not be deemed to be sales for further processing and shall be taxable. For purposes of this Subitem, the term "byproduct" shall mean any *incidental product* that is sold for a sales price less than the cost of the materials.

La.R.S. 47:301(10)(c)(i)(aa)(III)(aaa) (emphasis added).

The Department also alleged in its lawsuit, and again maintains here, that "Section 2 of Act 3 provides that it is intended to clarify the original intent and

application of R.S. 47:301(10)(c)(i)(aa)[1] and is, therefore, retroactive and applicable to the Audit Period."

NISCO asserts "Act 3 violates multiple fundamental principles of constitutional law, including the Tax Limitation Clause of the Louisiana Constitution, the Separation of Powers Doctrine embodied in the Louisiana Constitution, and the Due Process and Equal Protection Clauses of the Louisiana and United States Constitutions." NISCO filed exceptions of lis pendens, prescription, no cause of action, and, a motion for summary judgment as a matter of law based on the allegation that the enactment of Act 3 was "in violation of the Tax Limitation Clause of the Louisiana Constitution." CPSB filed a motion for summary judgment. NISCO filed a cross motion for summary judgment re-urging its exceptions and its motion for summary judgment. NISCO also asserted that "Act 3 has no application to use tax" and in the alternative it asserted "Act 3's application to NISCO's use of

_____

[1]

> (c)(i)(aa) The term "sale at retail" does not include sale of materials for further processing into articles of tangible personal property for sale at retail when all of the criteria in Subsubitem (I) of this Subitem are met.
>
> (I)(aaa) The raw materials become a recognizable and identifiable component of the end product.
>
> (bbb) The raw materials are beneficial to the end product.
>
> (ccc) The raw materials are material for further processing, and as such, are purchased for the purpose of inclusion into the end product.
>
> (II) For purposes of this Subitem, the term "sale at retail" shall not include the purchase of raw materials for the production of raw or processed agricultural, silvicultural, or aquacultural products.
>
> (III)(aaa) If the materials are further processed into a byproduct for sale, such purchases of materials shall not be deemed to be sales for further processing and shall be taxable. For purposes of this Subitem, the term "byproduct" shall mean any incidental product that is sold for a sales price less than the cost of the materials.
>
> (bbb) In the event a byproduct is sold at retail in this state for which a sales and use tax has been paid by the seller on the cost of the materials, which materials are used partially or fully in the manufacturing of the byproduct, a credit against the tax paid by the seller shall be allowed in an amount equal to the sales tax collected and remitted by the seller on the taxable retail sale of the byproduct.

La.R.S. 47:301(10),pertinent part.

limestone violates the Equal Protection Clauses of the Louisiana and Untied States Constitutions; and NISCO's purchases of limestone for further processing into its ash product are not taxable under Act 3, because NISCO's ash product is not an 'incidental' product, and therefore does not meet the definition of 'byproduct' under Act 3."

The trial court found NISCO's production of ash is "incidental" to its manufacturing of electricity thus the ash "fits the definition of byproduct in Act 3 and it doesn't qualify NISCO for the tax exclusion." It ignored the Louisiana Supreme Court's holding in *Bridges v. Nelson Indus. Steam Co.,* 15-1439 (La. 5/3/16), 190 So.3d 276 (*NISCO I*), that the ash produced was an intentionally planned byproduct/end product of NISCO's manufacturing operation and therefore the limestone used to produce the ash was excluded from sales and use tax. The trial court also found that Act 3 "is not a levy of a new tax [and] it's not a repeal of a tax exemption[, but] it's a close call [as to ] whether or not it's an increase of an existing tax." Ultimately the trial court ruled that Act 3 is not an increase of an existing tax. The trial court further found Act 3 constitutional because NISCO did not overcome the presumption of constitutionality. It denied all NISCO's exceptions, denied its motion for summary judgment and its cross motion for summary judgment, and granted CPSB's motion for summary judgment. NISCO appealed asserting seven assignments of error:

1. The District Court erred in denying NISCO's Motion for Summary Judgment and Cross Motion for Summary Judgment because Act 3 meets the Louisiana Supreme Court's three-pronged test for legislation that levies a new tax or increases an existing tax, and was enacted without the supermajority vote of both houses of the Legislature required for such legislation under the Tax Limitation Clause of the Louisiana Constitution.

2. The District Court erred in denying NISCO's Peremptory Exception of No Cause of Action and Cross Motion for Summary Judgment because Act 3 is retroactive substantive law enacted under the guise of interpretive legislation, and targets and attempts to "legislatively overrule" prior Louisiana Supreme Court jurisprudence, thus

3

impinging on the judicial authority in violation of the Separation of Powers Doctrine embodied in the Louisiana Constitution.

3. The District Court erred in denying NISCO's Peremptory Exception of No Cause of Action and Cross Motion for Summary Judgment because Art 3 is a retroactive new tax; or alternatively, its retroactive application is not supported by a legitimate purpose furthered by rational means, is not for a modest period of time, and divests NISCO of vested rights.

4. The District Court erred in denying NISCO's Cross Motion for Summary Judgment because Act 3 created disparate treatment of purchasers of materials further processed into byproducts for sales tax purposes and use tax purposes, and that disparate treatment has no rational basis, in violation of the Equal Protection Clauses of the Louisiana and United States Constitutions.

5. The District Court erred in denying NISCO's Cross Motion for Summary Judgment because Act 3 does not amend the further processing exclusion in the definition of "use" for use tax purposes, and thus does not apply to CPSB's suit to collect use tax.

6. The District Court erred in denying NISCO's Cross Motion for Summary Judgment because NISCO purchases limestone for further processing into an ash product that is not an "incidental" product, and thus not a "byproduct" for which raw material purchases are subject to tax under Act 3.

7. The District Court erred in denying NISCO's Peremptory Exception of Prescription and Cross Motion for Summary Judgment because the suit seeks to collect taxes becoming due before December 31, 2013 and was not filed until April 4, 2017, more than three years from December 31st of the year in which those taxes became due, and because a prior action filed before December 31, 2016 was (i) filed in an action in which the district court had been divested of jurisdiction, and (ii) dismissed without prejudice.

**Legal Analysis**

Appellate courts review summary judgments de novo, using the same analysis as the trial court in deciding whether summary judgment is appropriate. *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La. 7/5/94), 639 So.2d 730. A motion for summary judgment must be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B).

*Terrell v. Town of Lecompte*, 18-1004, p. 4 (La.App. 3 Cir. 6/5/19), 274 So.3d 605, 608.

4

The factual backdrop of this case as set forth above is not in dispute. In support of its cross motion for summary judgment NISCO provided affidavits of Shelley G. Hacker (Hacker) and Gary Livengood (Livengood). Hacker and Livengood both testified in *NISCO I*. In addition to the information contained in their affidavits in support of NISCO's motions and exceptions both attached their trial testimony in the previous case. The affidavits of Hacker and Livengood are uncontradicted. In *NISCO I* the supreme court found that NISCO's production of ash *is not an incidental byproduct* but is in fact an *end product* "produced and sold to LA Ash, making it an 'article of tangible personal property for sale at retail'" *NISCO I*, 190 So.3d at 282.

In *NISCO I* the state supreme court found that La.R.S. 47:301(1)(a)(i)(c)(1)(aa) statutorily excluded "sales of materials for further processing into articles of tangible personal property" from the term "sale at retail." *NISCO I*, 190 So.3d at 279. The supreme court explained that this statutory provision was a tax *exclusion* differentiating it from a tax *exemption*. While a *tax exemption* makes a transaction that would otherwise be taxable exempt from such taxation, a *tax exclusion* renders a transaction not taxable *ab initio*. "Transactions excluded from the tax are those which, by the language of the statutes, are defined as beyond the reach of the tax." *NISCO I*, 190 So.3d at 280 "quoting Bruce J. Oreck, *Louisiana Sales and Use Taxation* (2d ed. 1996) §3.1."

> Although the "further processing exclusion" is deemed neither an exclusion nor an exemption in the statute itself, as we stated in *Harrah's Bossier City [Inv. Co., LLC v. Bridges,* 09–1916, pp. 9–10 (La.5/11/10)], 41 So.3d [438],at 450:
>
> > There are no "magic words" necessary to create an exemption or an exclusion; *the determining factor is the effect of the statute:* "the words and form used legislatively in granting an exemption are not important if, in their essence, the Legislature creates an exemption." *Wooden v. Louisiana Tax Commission,* 94–2481 (La.2/20/95), 650 So.2d 1157, 1161, citing *Meyers v. Flournoy,* 209 La. 812, 25 So.2d 601 (1946). [Emphasis added].

This court has determined the "further processing exclusion" was designed "to eliminate the tax on the sale of a material purchased for further processing into finished products and to place the tax on the ultimate consumer of the finished product processed from the raw material." This court's findings regarding the purpose of the provision, together with this provision's placement in the definition section, rather than in La. R.S. 47:305 with many clear "exemptions," indicate that the legislature meant this provision to be a limitation *ab initio* on the definition of "sale at retail." Thus, it seems the "further processing provision" is an exclusion. Indeed, this conclusion follows logically from the underlying principle that "sales at retail" are subject to sales tax but sales "for resale" including, by extension, sales of materials for further processing *before* resale, are categorically not considered "sales at retail," because the buyer is not the ultimate consumer. Thus, we find the provision at issue is an exclusion and will be liberally construed in favor of the taxpayer, NISCO.

*NISCO I*, 190 So.3d at 280–81(third alteration in original) (footnote omitted).

The new statutory definition of "sale at retail" enacted by Act 3 provides:

(c)(i)(aa) The term "sale at retail" does not include sale of materials for further processing into articles of tangible personal property for sale at retail when all of the criteria in Subsubitem (I) of this Subitem are met.

(I)(aaa) The raw materials become a recognizable and identifiable component of the end product.

(bbb) The raw materials are beneficial to the end product.

(ccc) The raw materials are material for further processing, and as such, are purchased for the purpose of inclusion into the end product.

La. R.S. 47:301(10), in pertinent part.

With the addition of subitem (I) parts (aaa), (bbb) and (ccc) to the statute the legislature incorporated into the statute the three-pronged test enunciated in *International Paper, Inc. v. Bridges*, 07-1151 (La. 1/16/08), 972 So.2d 1121, applied by the supreme court in *NISCO I*. In *NISCO I* the supreme court found that NISCO's manufacturing of ash satisfies all three prongs of the *International Paper* test. Its findings likewise lead to the inescapable conclusion that NISCO's continued purchases of limestone for further processing into ash meet the new statutory criteria under which NISCO's purchases of limestone are still excluded from sales and use

6

tax.  The supreme court previously determined the production of ash by NISCO is

an *intentional, planned, end product of their manufacturing process.* NISCO's

witnesses testified in their affidavits that nothing has changed since *NISCO I* was

decided regarding the manufacture of electricity, steam, and ash at its facility, and

their testimony would be the same in this case.  We therefore find the trial court

erred in finding NISCO's production of ash is an incidental by-product.  As the

supreme court found in *NISCO I*:

> The purpose to produce and sell ash is evidenced in the "Partnership Agreement's" language that NISCO would (1) conduct "any activities related" to the manufacture of electricity and steam, (2) construct substantial "New Facilities", which contemplated the handling and sorting of the ash, and (3) receive income from the ash sales. Undisputed testimony established that NISCO actively purchased equipment specifically designed for the production of ash and sought a buyer for its ash. For the last twenty-two years, NISCO has sold one hundred percent of its ash product. NISCO's current contract with its limestone supplier recognizes that the limestone will be used for the two-fold purpose of absorbing sulfur released by the petcoke *and* producing ash as a saleable product. As stated earlier, the ash brings in roughly $6.8 million in revenue. The fact that the ash profit contributes to NISCO's bottom line and acts as a cost offset, rather than the company's principal income, does not change the fact that the ash is still an article of tangible personal property that will be resold to another consumer, who will bear the ultimate burden of taxation. Accordingly, we find NISCO's purposeful decisions related to engineering, infrastructure, and marketing lead to the only possible conclusion that the limestone was purchased with the purpose—perhaps not the sole or primary purpose, *but the purpose nonetheless—of making a saleable end product of ash.* Since the limestone is a recognizable, identifiable, beneficial material bought for the purpose of inclusion in the ash product, we find it qualifies for the "further processing exclusion."

*NISCO I*, 190 So.3d at 284–85 (emphasis added).

Act 3 further provides:

> If the materials are further processed into a byproduct for sale, such purchases of materials shall not be deemed to be sales for further processing and shall be taxable.  For purposes of this Subitem, the term "byproduct" shall mean any incidental product that is sold for a sales price less than the cost of the materials.

La.R.S. 47:301(10) (c)(i)(aa)(III) (aaa).

This language does not render NISCO's purchase of limestone taxable, as CPSB asserts, because the ash product *manufactured* by burning limestone with sulfur, is *not an incidental byproduct*. As the supreme court previously determined, the ash is *an intentionally planned end product* for which only the ultimate consumer is to be taxed.

> The "further processing exclusion" simply seeks to ensure that double taxation is avoided by only taxing the ultimate consumer. To determine the rightful taxpayer of the raw material's sales tax, only the manufacturing process (and the physical and chemical components of the materials involved therein) is germane to the "purpose" test. Thus, the only question to ask is whether the limestone was purchased with the purpose (although not necessarily the *primary* purpose) of inclusion in the final product of ash. We find the record undeniably supports an affirmative answer to this inquiry.

*NISCO I*, 190 So.3d at 284.

We find, when properly applied, Act 3's revisions to the statute do not render NISCO's purchases of limestone taxable because, as the supreme court has already found, NISCO purchases this raw material "for the purpose of inclusion into the end product;" the limestone is "a recognizable and identifiable component of the end product;" and the limestone is "beneficial to the end product." *See* La.R.S. 47:301(10)(c)(i)(aa) (I)(aaa), (bbb), and (ccc). This satisfies the statute's three-part test just as the court found it satisfied the same jurisprudential test articulated in *International Paper*. According to the affidavits presented in support of NISCO's motion and cross motion for summary judgment the factual evidence from which these determinations are made has not changed since the supreme court's decision in *NISCO I*. Clearly, *the ash is not an incidental byproduct* and therefore the limestone used to make it is excluded from taxation for the same reasons it was excluded under the prior version of the statute. Thus, we find the trial court erred in denying NISCO's exception of no cause of action. Because we find NISCO's purchase of limestone is excluded from taxation the statute as applied to NISCO

does not violate constitutional requirements of equal protection. Likewise, our ruling renders moot NISCO's exceptions of prescription and lis pendens.

NISCO has also raised the question of whether passage of this Act without the requisite two-thirds vote of both houses of the legislature violates the constitutional prohibition against enacting a new tax or increasing a tax without meeting this requirement. Under our application and interpretation of the new provisions added by Act 3, we find the act does not impose a new tax or increase a tax but merely codifies the prior jurisprudence by making the *International Paper*, 972 So.2d 1121. three-pronged-test the statutory test for determining whether materials used in further processing that result in the production of a by-product are or are not excluded from sales and use taxation. This concept of incidental byproduct versus intentional end product was already jurisprudentially recognized in the courts' prior determinations regarding "further processed goods." We do not read the statute to mean that the determination of whether a product is an incidental byproduct or an intended end product turns solely on a cost approach based on whether the "product" sells for less than the cost of the material needed to produce it. CPSB interprets the statute to define a byproduct as any product produced incidentally which sells for less than the material needed to make that byproduct costs. We reject that interpretation of the statutory language. We read the language to mean that for a further-processed material to be subject to sales and use taxation, the byproduct produced using that material (1) must be an incidental product *and* (2) it must be one that is sold for a price less than the cost of the materials. This interpretation is consistent with prior jurisprudence and makes economic sense. The courts have long held that *intentionally manufactured byproducts/end products* are *a* product even if not *the primary* product of the business, as here. NISCO's operation, according to the supreme court, exemplifies this understanding. Its operation produces electricity and steam for sale, and it elected to manufacture those products by adding limestone

9

to petcoke, thereby positively impacting the atmosphere by negating the bad effects of sulfur produced in the operation. It also elected to use this process because it could sell the ash produced by using this method to help the bottom line of its overall manufacturing operation. As the supreme court explained in *NISCO I*, this is the very kind of material for further processing the sales tax has never intended to tax. The tax burden is appropriately placed on the end-user. As the state supreme court noted in *NISCO I*:

> The existing … legislative intent encourages courts and the Louisiana Department of Revenue to adhere to the exclusive three-prong test set forth by the courts. Particularly, the legislature recognized that many other states do not tax *any* raw materials used in the manufacturing of products for resale. Deviation from this three-prong test, as warned by the legislature could 'undermine the efforts of Louisiana to attract additional investment dollars in the state. Accordingly, we find the conclusion reached herein best comports with the legislative intent regarding taxation of materials further processed into articles of tangible personal property.

*NISCO I*, 190 So.3d at 286-87(footnote omitted).

NISCO's ash is an example of an intentional end product that sells for less than the limestone to produce it costs. It is not an unplanned incidental product. It is a well-planned intentional end product that was part and parcel of its manufacturing operation from day one. The fact that the ash sells for less than the limestone to produce it costs does not render the purchases of limestone used for further processing taxable under either the prior jurisprudential analysis or under the present statute. Under both the prior jurisprudence and the new law the limestone used to produce the ash is excluded from sales and use tax.

### Decree

For the reason stated, we reverse the trial court's grant of summary judgment in favor of the Calcasieu Parish School Board Sales and Use Tax Department and we hereby grant Nelson Industrial Steam Company's Exception of No Cause of Action, raised in its Cross Motion for Summary Judgment, dismissing Plaintiff's

10

claims with prejudice. Court costs in the amount of $12,242.09 on appeal and $14,946.14 in the trial court are assessed against the Calcasieu Parish School Board Sales and Use Tax Department.

**REVERSED.**